[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11944

Non-Argument Calendar

_____

MERLYN JUDITH MUNGUIA-RAMOS,

                                                                        Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

                                                                        Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A202-001-416

_____

_____

No. 22-14102

Non-Argument Calendar

_____

MERLYN JUDITH MUNGUIA-RAMOS,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A202-001-416

_____

Before LUCK, LAGOA, and KIDD, Circuit Judges.

PER CURIAM:

Merlyn Judith Munguia-Ramos seeks review of the Board of Immigration Appeals' ("BIA") order affirming (1) the Immigration Judge's denial of her motion to reopen and rescind her *in absentia*

removal order (Case No. 22-11944) and (2) the BIA's order denying her motion to reconsider (Case No. 22-14102).[1] Munguia-Ramos argues that her notice to appear was defective because it did not include the time and place of the initial removal hearing. She also argues that the Immigration Judge erred by finding that her motion to reopen was untimely because she did not receive notice in accordance with INA §§ 239(a)(1), (2), 8 U.S.C. §§ 1229(a)(1), (2). She further contends that the BIA clearly erred by accepting the Immigration Judge's finding that she failed to rebut the presumption of effective service by mail of her hearing notice because her attestation that she never received the notice of hearing was uncontroverted by the government. Finally, Munguia-Ramos argues that the BIA abused its discretion by denying her motion to reconsider because the government could not establish by clear, unequivocal, and convincing evidence that she received written notice of the time and place of her proceedings and of the consequences of failing to appear.

We review only the BIA's decision, except to the extent that the BIA expressly adopts the Immigration Judge's opinion or reasoning. *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011). Where the BIA issues its own opinion and relies on the Immigration Judge's decision and reasoning without expressly adopting the Immigration Judge's opinion, we review the Immigration Judge's opinion, to the extent that the BIA found that the Immigration

---

[1] The petitions in Case No. 22-11944 and Case No. 22-14102 have been consolidated for purposes of appeal.

Judge's reasons were supported by the record, and we review the BIA's decision, with regard to those matters on which it rendered its own opinion and reasoning. *Id.* We review an agency decision regarding a motion to reopen or reconsider for an abuse of discretion, but we review *de novo* any underlying legal conclusions. *Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1315 (11th Cir. 2022); *Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1252 (11th Cir. 2008). In reviewing the denial of a motion to reconsider, we consider whether the BIA exercised its discretion arbitrarily or capriciously. *Ferreira v. U.S. Att'y Gen.*, 714 F.3d 1240, 1242–43 (11th Cir. 2013). The BIA abuses its discretion when it misapplies the law in reaching its decision or when it fails to follow its own precedents without providing a reasoned explanation for doing so. *Id.* at 1243.

A court can only review a final order of removal if "the alien has exhausted all administrative remedies available to the alien as of right." INA § 242(d)(1), 8 U.S.C. § 1252(d)(1). The obligation to exhaust administrative remedies is a claim-processing rule, not a jurisdictional limitation. *Santos-Zacaria v. Garland*, 598 U.S. 411, 416–19 (2023). We have since clarified that INA § 242(d)(1), 8 U.S.C. § 1252(d)(1), as a claim-processing rule, is generally applied where it has been asserted by a party. *Kemokai v. U.S. Att'y Gen.*, 83 F.4th 886, 891 (11th Cir. 2023).

A notice to appear has various requirements, including that it must specify the nature of the proceedings against the alien, the charges against the alien and the statutory provisions alleged to have been violated, the time and place at which the proceedings

22-11944          Opinion of the Court          5

will be held, and the consequences for failing to appear at such proceedings. INA § 239(a)(1), 8 U.S.C. § 1229(a)(1). It must also include the requirement that the alien immediately provide (or have provided) the Attorney General with a written record of an address and telephone number at which the alien may be contacted respecting removal proceedings. INA § 239(a)(1)(F)(i), 8 U.S.C. § 1229(a)(1)(F)(i). A notice of change in time or place of proceedings is distinguished from a notice to appear, in that it must only specify the new time or place of the proceedings, and the consequences for failing to attend such proceedings. INA § 239(a)(2), 8 U.S.C. § 1229(a)(2). A written notice of a change in time or place of proceedings is not required if the alien has failed to provide her address as required. INA 239(a)(2)(B), 8 U.S.C. § 1229(a)(2)(B).

An alien who, after written notice, fails to attend a proceeding shall be ordered removed *in absentia* if the government establishes by clear, unequivocal, and convincing evidence that the written notice was provided and that the alien is removable. INA § 240(b)(5)(A), 8 U.S.C. § 1229a(b)(5)(A). Written notice is considered sufficient if provided at the most recent address provided by the alien. *Id.* An order of removal *in absentia* may be rescinded upon a motion to reopen filed at any time if the alien demonstrates that he did not receive notice. INA § 240(b)(5)(C), 8 U.S.C. § 1229a(b)(5)(C); *see also* 8 C.F.R. § 1003.23(b)(4)(ii).

A putative notice to appear that fails to designate the specific time or place of a noncitizen's removal proceedings is not a notice to appear under § 1229(a) that triggers the stop-time rule. *Pereira v.*

*Sessions*, 585 U.S. 198, 211–12 (2018).  A notice to appear must be a single document containing all the required information about the noncitizen's removal hearing.  *Niz-Chavez v. Garland*, 593 U.S. 155, 170 (2021).

In *Campos-Chaves v. Garland*, 602 U.S. 447, 453 (2024), a notice to appear was issued to Campos-Chaves indicating that removal proceedings would occur at a date and time to be set.  A few months later, the government sent Campos-Chaves a notice of hearing that set the specific date and time for his hearing.  *Id.*  After Campos-Chaves failed to appear for his hearing, the IJ ordered him removed *in absentia*.  *Id.*  Nearly thirteen years later, Campos-Chaves sought to reopen his removal proceedings, arguing that a notice to appear that does not specify the time and place of the hearing was not a notice under INA § 239(a), 8 U.S.C. § 1229(a).  *Id.*  The Supreme Court noted that an *in absentia* removal order can be rescinded only where a noncitizen can demonstrate that he did not receive notice under INA § 239(a)(1), 8 U.S.C. § 1229(a)(1) or (2), whichever corresponds to the hearing at which the noncitizen was ordered removed *in absentia*.  *Id.* at 457.  The Supreme Court noted that, even where a noncitizen's notice to appear was defective, a subsequent notice that includes the new time or place of the proceedings and the consequences of failing to attend is a "new" notice because it represents the first time that the noncitizen is informed about when the specific hearing will take place.  *Id.* at 461–62.

In *Dragomirescu v. U.S. Attorney General*, 44 F.4th 1351, 1352 (11th Cir. 2022), a notice to appear was issued to Dragomirescu indicating that removal proceedings would occur at a date and time to be set. A notice specifying the time and place of his removal hearing was sent to the address on file and was returned undeliverable. *Id.* at 1353. The immigration court ordered his removal *in absentia*, and it attempted to send notice of the removal determination to the same address as before, which was returned undeliverable. *Id.* Dragomirescu sought to rescind his removal order and reopen his removal proceedings, alleging that he had received neither the notice to appear nor the notice setting the time and place of his hearing. *Id.* We held that removal *in absentia* was appropriate because, while Dragomirescu contended that he did not receive the original notice to appear, a presumption of receipt applied to a notice properly addressed and mailed according to normal office procedures. *Id.* at 1357. Relying on BIA precedent, we noted that certain factors weighed against the presumption of delivery including the noncitizen's diligence in moving to reopen removal proceedings, affidavits from the noncitizen or others, and whether the noncitizen had "every incentive to attend court and challenge his removability." *Id.* at 1357–58 (internal quotations omitted).

Here, Munguia-Ramos's notice of hearing was effective because it included the new time and place of the proceedings and the consequences of failing to attend such proceedings. The government sent the notice of hearing to the address that Munguia-Ramos provided, and nothing in the record indicates that the notice was returned as undeliverable by the United States Postal Service.

Thus, we conclude that the BIA did not err in affirming the Immigration Judge's decision to deny Munguia-Ramos's motion to reopen and rescind her *in absentia* removal order.  Furthermore, we conclude that the BIA did not abuse its discretion in denying Munguia-Ramos's motion to reconsider because the evidence in the record supported the conclusion that her notice of hearing was mailed to the address she provided.

For these reasons, we deny Munguia-Ramos's petition.

**PETITION DENIED.**